IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANTONIO DEVOE JONES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CASE NO. 1:21-cv-362-ECM |
| ) | [WO] |
| JOHN Q. HAMM, Commissioner, ) | |
| Alabama Department of Corrections, ) | |
| *et al.*, ) | |
| ) | |
| Respondents. ) | |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court is Petitioner Antonio Devoe Jones' ("Jones") Verified Petition to Perpetuate Testimony in a Death Penalty Case (doc. 28), which the Respondents oppose. For the reasons that follow, the petition is due to be denied.

**I. BACKGROUND**

Jones was convicted of capital murder for the New Years Eve 1999 killing of Ruth Kirkland in Dothan, Alabama. *Jones v. State*, 987 So. 2d 1156, 1158 (Ala. Crim. App. 2006). The murder was made capital "because it was committed during the course of a burglary in the first degree." *Id.* (citing ALA. CODE § 13A-5-40(a)(4)). The jury recommended that Jones be sentenced to death. *Id.* The trial court accepted the jury's recommendation and sentenced Jones accordingly. Jones' conviction and sentence were affirmed on direct appeal. *Id.* at 1172. Both the Alabama Supreme Court and the United States Supreme Court denied certiorari review.

Jones next sought postconviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. Ultimately, the Circuit Court summarily dismissed his Rule 32 petition without affording an evidentiary hearing. (Doc. 1 at 12, para. 40). The Alabama Court of Criminal Appeals ("ACCA") dismissed Jones' appeal on jurisdictional grounds. *Jones v. State*, 268 So. 3d 584 (Dec. 12, 2017) (Table). The Alabama Supreme Court reversed and remanded. *Ex parte Jones*, 322 So. 3d 970 (Ala. 2019). On remand, the ACCA affirmed the summary dismissal of the Rule 32 petition. *Jones v. State*, 322 So. 3d 979 (Ala. Crim. App. 2019). Both the Alabama Supreme Court and the United States Supreme Court denied certiorari review. Jones filed the instant federal habeas petition in May 2021.

## II. JONES' VERIFIED PETITION

Jones seeks an order pursuant to Rule 27 of the Federal Rules of Civil Procedure authorizing him to take the deposition of his lone surviving trial attorney, Clark M. Parker. He asserts that Mr. Parker "has candidly admitted prejudicial mistakes in his understanding of the Alabama law governing the death penalty," which caused counsel to present a "legally invalid defense" at trial and on appeal. (Doc. 28 at 1). Jones maintains that a "different valid and meritorious defense was available but was not raised at trial." (*Id.*).

Jones' verified petition is supported by the affidavit of Mr. Parker, who testifies, in pertinent part, as follows: in defending against the capital murder charge of murder during the course of a burglary, he "was operating with the misunderstanding that a completed theft from the dwelling was a necessary element for the State to prove that a burglary had occurred"; he believed the lack of direct evidence that anything had been taken from Mrs.

2

Kirkland's home provided him with "a valid defense to the burglary aggravating factor"; his strategy during trial was "to emphasize the lack of evidence that anything was taken from the house"; the prosecution argued at trial, and the trial court instructed the jury, that "intent to commit a theft from the dwelling, and not an actual completed theft," was all that was required to be proved by the State in order to support its capital murder charge; and even after Jones was convicted and sentenced to death, he "continued to argue [on appeal] that the State had failed to prove burglary due to the lack of evidence that anything was taken from the house." (Doc. 28-1 at 4–5, paras. 9–13). Mr. Parker thus summarizes his testimony as follows:

> My belief throughout the trial and appeal was that a completed theft was necessary to establish burglary. I now understand that my belief was in error. This was a mistake on the part of defense counsel, and it was not an intentional strategy on my part to argue something that was contrary to the established law.

(*Id.* at 5, para. 14). Finally, Mr. Parker addresses his failure to argue that Jones should have been convicted of only felony murder, which, had that defense succeeded, would have rendered Jones ineligible for the death penalty under Alabama law. (*Id.* at 6, paras. 17–20). Specifically, Mr. Parker testifies that, if he had not misunderstood Alabama law regarding burglary, and if he had a proper understanding of Alabama's felony murder law, he would have argued the felony murder defense rather than the faulty defense he presented at trial. (*Id.* at 6, para. 20).

### III.  LEGAL STANDARD

Rule 27 contains three provisions addressing actions to perpetuate testimony by deposition.  Rule 27(a) provides that, before a civil action is filed, a "person who wants to perpetuate testimony" about a matter within the purview of a federal court "may file a verified petition in the district court for the district where any expected adverse party resides."  This verified petition "must ask for an order authorizing the petitioner to depose the named persons in order to perpetuate their testimony." FED. R. CIV. P. 27(a)(1).  Further, the verified petition must show, *inter alia*, that the petitioner "expects to be a party to an action cognizable in a United States court but cannot presently bring it or cause it to be brought," "the facts that the petitioner wants to establish by the proposed testimony and the reasons to perpetuate it," and the name and "expected substance of the testimony of each deponent." FED. R. CIV. P. 27(a)(1)(A)–(E).  Rule 27(b), on the other hand, provides for depositions to perpetuate testimony pending appeal.  Specifically, where an appeal has been taken from a judgment of the district court, or may still be taken, a party may move in the district court to depose a witness to perpetuate the witness's testimony "for use in the event of further proceedings in that court." FED. R. CIV. P. 27(b)(1).  Finally, Rule 27(c), under the heading "Perpetuation by Action," provides simply that "[t]his rule does not limit a court's power to entertain an action to perpetuate testimony."[1]

---

[1] Wright and Miller explain that "[s]ubdivision (c) makes it clear that Rule 27 is not preemptive and does not limit the power of a court to entertain an action to perpetuate testimony.  However, the statutory procedure for perpetuation of testimony referred to in the Committee Note to the original rule was repealed by the 1948 revision of Title 28." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2071 (footnotes omitted).

4

## IV.  DISCUSSION

Jones' labeling of the instant request as a "Verified Petition to Perpetuate Testimony" at least implies his intent to travel under Rule 27(a).  As discussed above, however, Rule 27(a) predicates the authority to file such a "verified petition" on the absence of a pending civil action for which the proposed deposition testimony may be relevant.  Because Jones is already a party to the pending civil action for which he seeks to perpetuate testimony, Rule 27(a) has no apparent applicability, and Jones does not argue otherwise. *See* 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2071 ("Rule 27 offers a simple method of perpetuating testimony for use in a future action . . . .  Rule 27 provides for depositions prior to institution of an action and pending appeal."); *id.* § 2072 ("A proceeding to perpetuate testimony is not based on a pending action[.]").

The only specific Rule 27 provision Jones invokes in his "verified petition," (*see* doc. 28 at 2), is Rule 27(b)(3), which authorizes a district court to permit a deposition to be taken pending appeal of a final judgment where "the court finds that perpetuating the testimony may prevent a failure or delay of justice."  But as the Respondents correctly argue, no judgment has been entered in this action, and no appeal is due to be taken; consequently, Rule 27(b) is inapplicable. (*See* doc. 34 at 2).  Jones, again, does not argue otherwise.

Jones nonetheless argues that he meets the equitable requirement of Rule 27(b)(3), in that the deposition of Mr. Parker "may prevent a failure or delay of justice."  This is so, Jones asserts, because he seeks to perpetuate important testimony that is at risk of

5

permanent loss due to Mr. Parker's advancing age and health issues. (Doc. 28 at 6–7; doc. 35 at 2–4). Even accepting Jones' equitable argument, however, he is still not entitled to proceed under the provisions of Rule 27(a) or (b) because he seeks to perpetuate testimony in a pending action in which there is no final judgment and in which no appeal has been taken. Based on the current posture of this case, Rule 27 provides no remedy for Jones.[2]

Because Rule 27 is not available to Jones, it follows that he must proceed under the other rules governing discovery. Unlike ordinary civil cases, discovery in habeas corpus actions is not provided as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Instead, discovery in habeas cases is at the discretion of the district court and is subject to the "good cause" requirement of Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts (the "Habeas Rules"). *Id*. Jones adamantly disclaims any intent to engage in discovery and maintains that Rule 6 of the Habeas Rules is inapplicable to his request. (*See* doc. 35 at 4–5). But if his "petition" may not proceed under Rule 27, and he expressly does not seek to avail himself of discovery pursuant to Rule 6 of the Habeas Rules, there is no obvious rule-based authority for his request.

---

[2] The cases Jones cites as "analogous situations involving habeas corpus proceedings" in which Rule 27 was employed to perpetuate deposition testimony, (*see* doc. 28 at 7), are not materially analogous because none involves a habeas petitioner with a pending, non-stayed habeas corpus action seeking to perpetuate deposition testimony in support of a fully exhausted claim presented in the habeas petition. Two of the cases Jones cites, *In re Sims*, 389 F.2d 148 (5th Cir. 1967), and *Petition of Thomas*, 155 F.R.D. 124 (D. Md. 1994), involved litigants seeking to preserve testimony for anticipated but unfiled habeas actions. The other two cases, *Calderon v. U.S. Dist. Ct. for N. Dist. of Cal.*, 144 F.3d 618 (9th Cir. 1998), and *Tennison v. Henry*, 203 F.R.D. 435 (N.D. Cal. 2001), both originated in the Northern District of California and involved habeas petitioners seeking to preserve deposition testimony in support of unexhausted habeas claims that they anticipated filing in federal court after completing state court exhaustion. Jones has not cited any case in which a federal court has employed Rule 27 to perpetuate testimony in support of an exhausted claim pending before that court in an active habeas matter.

Notwithstanding the foregoing, "habeas corpus has traditionally been regarded as governed by equitable principles." *Fay v. Noia*, 372 U.S. 391, 438 (1963). Assuming without deciding that this Court has the inherent equitable authority to order the deposition of Mr. Parker to perpetuate his testimony, it does not follow that Jones has established his entitlement to this remedy based on his present allegations. Four considerations, discussed in more detail below, inform this determination.

*First*, this Court is precluded from considering Mr. Parker's deposition testimony in applying the standard of review prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs this Court's review of Jones' ineffective assistance of counsel claim. As alleged in the habeas petition, the ineffective assistance of counsel claim for which Mr. Parker's deposition is posited as necessary, Claim II, was exhausted in the state courts and was denied on the merits by the ACCA. (*See* doc. 1 at 275–85). Accordingly, as acknowledged in the petition, pursuant to AEDPA, Jones must show that the ACCA's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law," or "was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(1) & (2). In applying this standard of review to the state court's decision, this Court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (holding that review under § 2254(d)(1) is limited to the record before the state court); *id.* at 185 n.7 (recognizing that § 2254(d)(2)'s express reference to "the evidence presented in the State court" provides "additional clarity . . . on this point"). Although Mr.

7

Parker's testimony could be relevant if this Court undertakes *de novo* review of Jones' ineffective assistance claim, such review may follow only after Jones first satisfies AEDPA's demanding standard. For present purposes, because Mr. Parker's proposed testimony was not in the record before the ACCA when it adjudicated Jones' claim on the merits, this Court is precluded from considering such testimony in its review under § 2254(d).

*Second*, Jones fails to show that he is in imminent danger of losing the opportunity to present Mr. Parker's testimony should this Court determine that it may be considered. Jones' "verified petition" suggests some urgency due to Mr. Parker's age, sixty-one, and because he "has suffered a mild stroke or cerebral hemorrhage in the past." (Doc. 28 at 6). Yet Mr. Parker's affidavit depicts a midlife professional in full control of his faculties who is engaged in a complex legal practice on behalf of a consulting group operating in the home health field. According to his affidavit, Mr. Parker "advis[es] clients regarding licensure applications, training on operations, [and] regulatory matters, including accreditation from nationally recognized organizations." (Doc. 28-1 at 2, para. 2). In addition, since 2012, Mr. Parker has "been an Adjunct Professor in the Health Administration Department teaching health law at Florida Atlantic University." (*Id.* at 2–3, para. 3).

Mr. Parker does not allude to any health condition or other concern suggesting he faces a heightened risk of mortality, incompetence, or loss of memory. No doubt, capital habeas cases can take many years to resolve, and tomorrow is not promised for anyone; Jones' trepidation is understandable. But nothing in the "verified petition" or in Mr.

8

Parker's affidavit suggests an urgent need to preserve Mr. Parker's testimony beyond that which could be articulated by any other habeas petitioner. Concluding otherwise would effectively establish a new shadow discovery procedure based only upon a habeas petitioner's thin speculation about universal attributes like aging.

*Third*, Jones fails to show that Mr. Parker's testimony is essential to resolving the merits of his claim. The crux of Mr. Parker's affidavit testimony is that Jones' defense during the guilt phase of his capital trial "operat[ed] with the misunderstanding that a completed theft from the dwelling was a necessary element for the State to prove that a burglary had occurred." (Doc. 28-1 at 4, para. 9). The defense's guilt phase strategy was therefore focused on demonstrating the lack of evidence that anything had been taken from the victim's home. (*Id.* at 5, para. 11). Even after the trial court properly instructed the jury on the elements of burglary, including that intent to commit a burglary was sufficient to establish the offense, and Jones was convicted of murder made capital because it occurred during a burglary, the defense persisted in its erroneous understanding of Alabama law: Mr. Parker argued on direct appeal, in one of only three issues raised before the ACCA, "that the State had failed to prove burglary due to the lack of any evidence that anything was taken from the house." (*Id.* at 5, para. 13).

Assuming the veracity of Mr. Parker's affidavit testimony, it supports, at most, only one part of the test for establishing ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984): deficient performance. In other words, even if Mr. Parker's testimony is credited as demonstrating that Jones' counsel performed deficiently at trial, or on direct appeal, Jones still must show that he was prejudiced by counsel's

deficient performance, *i.e.*, "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. This inquiry "asks whether it is 'reasonably likely' the result would have been different" had counsel not performed deficiently. *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (quoting *Strickland*, 466 U.S. at 696). In the guilt phase context in which this claim arises, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 111 (citation omitted).

      Mr. Parker's affidavit amply supports the factual conclusion that the defense misunderstood the elements of burglary under Alabama law and that, operating under this misunderstanding, the defense failed to raise other potential defenses, including that Jones was guilty of only felony murder rather than capital murder. Mr. Parker's affidavit does not, however, establish that there is a substantial likelihood that Jones would not have been convicted of capital murder had the defense not labored under its misunderstanding of Alabama law. This is unsurprising, since the prejudice inquiry requires a thorough, objective examination of the entire trial court record to assess the likely effect of counsel's errors on the factfinder. *See Strickland*, 466 U.S. at 695–96 ("In making this determination, a court . . . must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary

10

picture, and some will have had an isolated, trivial effect."). Mr. Parker's opinion on the prejudice question, were he to offer it in his affidavit or at deposition, would not be determinative.

*Fourth*, and finally, there is no equitable imperative to order the immediate deposition of Mr. Parker because the core point of his testimony is inferable from the state court record. Jones states that, "[i]f deposed, [Mr.] Parker would admit he misunderstood the elements of burglary, and relied on that misunderstanding to form a defense for Petitioner both at trial and on appeal." (Doc. 35 at 4). But the state court record provides support for Mr. Parker's proposed testimony. For example, at the close of the prosecution's case, the defense moved for a judgment of acquittal, arguing that "there's no evidence that he committed a theft in the house." (Doc. 18-9 at 64). The prosecution rebutted this argument directly, explaining, "[f]or a burglary, I don't have to prove he took a stitching thing, Judge White. Just he had the intent at the time to go in the house that he wanted to commit the crime of theft." (*Id.* at 66). The trial court summarily denied the defense's motion. (*Id.* at 67).

Notwithstanding the trial court's rejection of the defense's reasoning, Mr. Parker persisted in this line of argument during closing argument. Mr. Parker "paraphrased" the indictment as follows:

> It says that Antonio Devoe Jones killed Ms. Kirkland by striking her with a cane and a wooden chair and he caused the death knowingly and after he unlawfully entered the residence of Ms. Kirkland with the intent to commit a crime, which is a theft, and that he did -- that Antonio Jones did cause or threaten immediate physical injury to Ms. Kirkland by the use of a cane

11

        and wooden chair, dangerous instrument, against this particular Code section.

(*Id.* at 166). Then, despite having recited the indictment's "intent" language, Mr. Parker argued that the State must show, as an "element" of the offense, that something was taken from the victim's home: "Now, in order for it to be capital, you got to have the capital elements that there's a theft or a burglary in connection with a murder. . . . Essentially the first thing I want you to look at is the element of what's taken—what was taken." (*Id.* at 166–67). Although Jones was arrested while driving the victim's Cadillac, Mr. Parker argued to the jury that, because there was no evidence that the car, or even the key to the car, was taken from inside the victim's home, the State had failed to establish the burglary element of its capital murder charge. (*Id.* at 167–70).[3] In sum, Mr. Parker's argument before the jury, especially when considered in the context of the defense's unsuccessful motion for judgment of acquittal, is consistent with his affidavit testimony about his misunderstanding of Alabama law.

        The record further supports—as Mr. Parker testifies in his affidavit—that the trial court's rejection of his argument, and the jury's guilty verdict, did not disabuse Mr. Parker

---

[3] And just as it had in responding to the defense's motion for judgment of acquittal, the prosecution refuted Mr. Parker's argument in its rebuttal closing:

> I don't have to prove they took anything in the burglary. I have to prove the time he went to her house and went inside. I don't have to prove a breaking, just an unlawful entering or remaining with the intent to commit theft. With the intent. Doesn't mean he has to take it.

(Doc. 18-9 at 197).

12

of any misunderstanding of the law. On direct appeal, Mr. Parker framed his claim of trial court error on this issue as follows:

> Mr. Jones argues that the trial court erred in not granting his motions for judgment of acquittal because the State failed to produce evidence that a theft had occurred pursuant to the burglary of the victim's house, as stated in the indictment, in that the victim's car was not in the victim's dwelling and there was no evidence that anything was taken from within the victim's dwelling.

(Doc. 18-12 at 73). The appellate brief repeated Mr. Parker's pattern of acknowledging the intent element of burglary but insisting, without support, that the State was required to prove a completed theft from the home to establish the requisite intent: "The State indicted Mr. Jones using the stated theory that he entered the victim's dwelling unlawfully with the intent to commit a theft therein. However, there was not one scintilla of evidence of a theft from within the house." (*Id.* at 75).

The ACCA made short work of Mr. Parker's argument:

> Contrary to Jones's contention, the law does not require that the crime—in this case, theft—be completed. Rather, the accused must merely unlawfully enter a dwelling with the intent to commit a crime. As the Alabama Supreme Court noted in *Ex parte Dixon*, 804 So. 2d 1075, 1079 (Ala. 2000), "Burglary in the first degree does not require that the defendant act during the commission of a theft." Indeed, this Court has long held that "'[t]o constitute burglary, it is not necessary that a theft be actually committed.'" *McGullion v. State*, 477 So. 2d 477, 484 (Ala. Crim. App.1985) (quoting *Houston v. State*, 321 So. 2d 261, 264 (Ala. Crim. App. 1975)). [. . .] Accordingly, because the State established that Jones entered Mrs. Kirkland's house with the intent to commit a theft, the State was not required to proffer additional evidence that Jones actually committed the theft by taking something from inside the house.

13

987 So. 2d at 1168.[4]   With Mr. Parker no longer appearing as counsel in certiorari proceedings before the Alabama Supreme Court, this claim of error was abandoned. (*See* doc. 18-13 at 3–7).

In sum, it is easily inferable from the state court record that, as Mr. Parker testifies in his affidavit, the defense at Jones' trial misunderstood the elements of the crime with which Jones was charged, and that it tailored his defense, at least in substantial part, around this misunderstanding of the law. The defense repeatedly argued—in its motion for judgment of acquittal, in closing arguments, and on direct appeal—that the State was required to prove that something was taken from the victim's home. As argued by the prosecution at trial, and as confirmed by the ACCA on direct appeal, this was a fundamental misapprehension of Alabama law. Therefore, Mr. Parker's proposed deposition testimony would, in large part, only make explicit what is implicit in the state court record. Given these circumstances, it is not necessary, at this time, to award the extraordinary relief of ordering Mr. Parker's deposition absent the authority of Rule 27 and outside the strictures of the rules governing discovery in habeas corpus cases.[5]

---

[4] The ACCA found that the State adequately established the requisite intent because it presented evidence that Mrs. Kirkland's home had been "ransacked" and "the contents of [her] purse were scattered on the floor[.]" 987 So. 2d at 1168. According to the ACCA, this evidence indicated that Jones "was searching for something." *Id*. "From this evidence establishing that Jones searched the areas of Mrs. Kirkland's house where she might keep valuables, it was logical for the jury to conclude that Jones entered Mrs. Kirkland's house with the intent to commit a crime namely, theft." *Id*. Furthermore, the ACCA also concluded that, even if Mr. Parker's argument were not incorrect as a matter of law, the evidence was sufficient for the jury to conclude that Jones had committed a theft in the victim's home. Specifically, the ACCA found that, because the victim's purse had been emptied on the floor, "the jury could conclude that Jones stole Mrs. Kirkland's keys while he was inside her house and, once outside, used the stolen keys to take the white Cadillac." *Id*.

[5] This Court's observation that the crux of Mr. Parker's proposed testimony is at least inferable from the state court record does not portend any conclusion about the application of § 2254(d)(2) in this matter.

## V. CONCLUSION

For the reasons stated, it is

ORDERED that Jones' Verified Petition to Perpetuate Testimony in a Death Penalty Case (doc. 28) is DENIED.

DONE this 15th day of August, 2025.

                                                /s/ Emily C. Marks
                                        EMILY C. MARKS
                                        CHIEF UNITED STATES DISTRICT JUDGE

---

Rather, it relates only to the question presently before the Court: the necessity of perpetuating Mr. Parker's testimony at this time. This Court recognizes that the ACCA disposed of Jones' ineffective assistance of counsel claim based, at least in part, on its finding that "[n]othing in the record suggests that Jones's counsel did not know the law regarding burglary." *Jones*, 322 So. 3d at 995. This finding is noteworthy given the ACCA's rejection of Jones' direct appeal, in which the ACCA plainly stated that Jones' argument was contrary to established law. *See Jones*, 987 So. 2d at 1168 ("Contrary to Jones's contention, the law does not require that the crime—in this case, theft—be completed. Rather, the accused must merely unlawfully enter a dwelling with the intent to commit a crime."). Ultimately, however, whether the ACCA's finding of fact in the Rule 32 appeal is unreasonable based upon the record before that court is not before this Court in the instant motion.